Filed 11/26/25  P. v. Stewart CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100640 |
| Plaintiff and Respondent, | (Super. Ct. No. 07F08378) |
| v. | |
| TOUSAUN STEWART, | |
| Defendant and Appellant. | |

In 2008, a jury found defendant Tousaun Stewart[1] guilty of one count of first degree murder and three counts of attempted murder.  In 2023, defendant petitioned the

---

[1]  In this appeal following the denial of a resentencing petition, defendant's name on the abstract of judgment is "Tousaun Davonn Stewart."  Defendant's petition, the order denying his petition, and the notice of appeal identify him as "Tousaun Stewart."  We use the latter name in this opinion.

trial court for resentencing under Penal Code[2] section 1172.6,[3] and the trial court denied the petition because, in part, defendant did not qualify for resentencing as a matter of law. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2008, a jury found defendant guilty of one count of first degree murder and three counts of attempted murder. The jury also found defendant committed the crimes for the benefit of a criminal street gang and that a principal was either armed with or discharged a firearm during the commission of the offenses.

Defendant's jury was instructed on aiding and abetting generally, as follows: "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. A person is equally guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it. [¶] Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime."

The jury was then instructed on aiding and abetting of intended crimes, in relevant part, as follows: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the [prosecution] must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and

---

[2]    Further undesignated section references are to the Penal Code.

[3]    Effective June 30, 2022, former section 1170.95 was recodified without substantive change to section 1172.6. (Stats. 2022, ch. 58, § 10.) Defendant filed his petition under former section 1170.95, but we refer to the current section 1172.6 throughout this opinion.

2

abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

The jury was then instructed that murder was a type of homicide and about murder with malice aforethought, where the jury was charged that, to find defendant guilty of murder, it had to find defendant aided and abetted an act causing death and held the mental state of either express or implied malice. To find defendant guilty of first degree murder, the jury was instructed it must find defendant acted with the intent to kill and with premeditation and deliberation.

As for attempted murder, the jury was instructed that it had to find defendant aided or abetted in the direct, but ineffectual step, toward killing another person and that defendant held the intent to kill. The jury was also instructed with the "kill zone" theory that permitted the jury to find defendant held the intent to kill the attempted murder victims if it found defendant intended to kill the intended victim and intended to kill either the attempted murder victims or anyone within the kill zone.

In February 2023, defendant petitioned for resentencing under section 1172.6. The trial court denied the petition, finding the petition was successive and procedurally barred by a 2020 denial of defendant's prior section 1172.6 petition. The court further found defendant was ineligible for relief as a matter of law.

Defendant appeals.

### DISCUSSION

Defendant raises multiple claims regarding the denial of his petition for resentencing, including that the trial court erred by finding his petition successive and by improperly weighing factual assertions from our opinion in defendant's direct appeal. We do not need to address these claims because defendant is not entitled to an

evidentiary hearing under section 1172.6 as a matter of law, rendering his other claims irrelevant.

I

*Applicable Law*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015, §§ 1-4) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and limited the scope of the felony-murder rule. (*People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957.)  The bill amended section 188, requiring that to be convicted of murder, "a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her [or their] participation in a crime."  (§ 188, subd. (a)(3), as amended by Stats. 2018, ch. 1015, § 2.)  Senate Bill 1437 also amended section 189, subdivision (e) so that a person may now be convicted of felony murder only under limited circumstances.  A principal in a murder may still be criminally liable, even as an aider and abettor, if he, she, or they personally possesses malice aforethought, whether express or implied.  (*People v. Silva* (2023) 87 Cal.App.5th 632, 639-640; *People v. Offley* (2020) 48 Cal.App.5th 588, 595-596 [Sen. Bill 1437 did not "alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous intent of the actual perpetrator' "].)

Senate Bill 1437 also created "a procedural mechanism for those previously convicted of murder under a theory amended in [Senate Bill 1437] to petition for resentencing."  (*People v. Emanuel* (2025) 17 Cal.5th 867, 880; see *People v. Lewis*, *supra*, 11 Cal.5th at p. 959.)  "The process begins with the filing of a petition that declares, among other things, that '[t]he petitioner could not presently be convicted of murder . . . because of changes to [s]ection 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill No. 1437.  (§ 1172.6, subd. (a)(3); see *id*., subd. (b)(1)(A).)"  (*Emanuel*, at p. 880.)  Senate Bill No. 775 (2021-2022 Reg. Sess.)

4

subsequently extended resentencing relief to any person convicted of murder based on any "other theory under which malice is imputed to a person based solely on that person's participation in a crime" and "attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a); see Stats. 2021, ch. 551, §§ 1-2.)

At the prima facie stage, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her [or their] factual allegations were proved." ' " (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971.) A court may not reject the petitioner's allegations " 'on credibility grounds' " or "engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id*. at pp. 971, 972.)

"If the trial court determines that the petitioner has made a prima facie case for relief, it 'shall issue an order to show cause.' (§ 1172.6, subd. (c).)" (*People v. Emanuel*, *supra*, 17 Cal.5th at p. 880.) However, " '[i]f the petition and record in the case establish conclusively that the [petitioner] is ineligible for relief, the trial court may dismiss the petition.' " (*People v. Antonelli* (2025) 17 Cal.5th 719, 724.) As our high court has "repeatedly said, '[t]he record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless.' " (*Id*. at p. 731.) "We independently review the trial court's determination that the petitioner failed to make a prima facie showing for relief." (*People v. Ramos* (2024) 103 Cal.App.5th 460, 465.)

II

*Defendant Is Not Entitled To Resentencing As A Matter Of Law*

As defendant acknowledges, the jury was not instructed on the felony-murder doctrine. Thus, defendant is eligible for resentencing under section 1172.6 only if the jury could have convicted pursuant to a theory under which malice was imputed to him based solely on his participation in a crime. (§ 1172.6, subd. (a).) Defendant points to the jury instructions detailed *ante* to argue the jury could have imputed implied malice to

5

him under an aider and abettor theory of murder similar to that discussed in *People v. Langi* (2022) 73 Cal.App.5th 972 and *People v. Powell* (2021) 63 Cal.App.5th 689. We disagree because the jury found defendant guilty of first degree murder, meaning it found he intended to kill the murder victim and acted with premeditation and deliberation. Because the jury found defendant acted with express malice, i.e., held the intent to kill, his intent was not imputed for the first degree murder conviction. (See *People v. Silva*, *supra*, 87 Cal.App.5th at pp. 639-640; *People v. Offley*, *supra*, 48 Cal.App.5th at pp. 595-596.)

As to the attempted murder convictions, defendant argues the instruction regarding the kill zone theory of intent made it such that he could have been convicted under an imputed malice theory. Defendant explains that, since his trial, the kill zone theory has been judicially undermined by cases emphasizing the instruction's permission to impute malice from the intended victim to victims the defendant intends to merely harm. Beyond quoting the jury instruction given in his case, defendant does not explain how it was infirm or permitted the offensive inferences he argues case law warns against. Given the lack of development, the issue is subject to appellate forfeiture. (*Public Employment Relations Bd. v. Bellflower Unified School Dist.* (2018) 29 Cal.App.5th 927, 939 [" ' "We are not bound to develop [the] appellants' arguments for them" ' "].)

Regardless, the instruction given here did not contain ambiguous language permitting the jury to impute malice from the intended victim to those within a zone of harm. The kill zone instruction in defendant's trial required the jury to find defendant "intended to kill [the intended target], but also either intended to kill [the attempted murder victims], or intended to kill anyone in the kill zone. If [the jury had] reasonable doubt whether the defendant intended to kill [the attempted murder victims and intended target] by *harming* everyone in the kill zone, then [it] must find the defendant not guilty of the attempted murder." (Italics added.) This language guarded against the impermissible inferences that defendant's intent to harm could equate to an intent to kill

6

or be imputed from one victim to another. Accordingly, we conclude the kill zone instruction did not permit the jury to convict defendant of attempted murder on a theory of imputed malice.

Citing *People v. Curiel* (2023) 15 Cal.5th 433 to challenge the murder and attempted murder convictions, defendant argues the record does not demonstrate a valid theory of murder consisting of a mens rea and corresponding actus reus. (*Id*. at p. 463 [the record of conviction must establish the jury made all of the findings necessary to support a conviction for murder or attempted murder under current law].) Not so.

As to the murder, the jury instructions required the jury to find, in addition to an intent to kill, "[t]he perpetrator committed an act, that the defendant aided and abetted, that caused the death of another person." (See § 187; *People v. Nunez* (2023) 97 Cal.App.5th 362, 368 [" 'First degree murder is an unlawful killing with malice aforethought, premeditation, and deliberation' "].) As to the attempted murder, the jury was required to find, in addition to an intent to kill, "[t]he perpetrator took direct but ineffective steps, that the defendant aided and abetted, toward killing another person." (See §§ 187, 664; see *People v. Mejia* (2012) 211 Cal.App.4th 586, 605 ["Attempted murder requires (1) a specific intent to kill and (2) a direct but ineffectual act toward accomplishing the intended killing"].) The jury's findings fulfill the elements for still valid theories for murder and attempted murder. (See *People v. Silva*, *supra*, 87 Cal.App.5th at pp. 639-640 [direct aiders and abettors are liable under current law for murder and attempted murder if they personally possess malice aforethought]; accord, *People v. Offley*, *supra*, 48 Cal.App.5th at pp. 595-596.) Accordingly, defendant is not entitled to resentencing under section 1172.6 as a matter of law.

## DISPOSITION

The order denying defendant's petition for resentencing is affirmed.

/s/_____
ROBIE, J.

We concur:

/s/_____
HULL, Acting P. J.

/s/_____
FEINBERG, J.